[S. F. No. 1738.   Department Two.—October 27, 1899.]
CHARLES H. HIGGINS, Appellant, v. CARRIE A. MANSON,
Administratrix, et cetera, Respondent.

EQUITABLE MORTGAGE— DEPOSIT OF PATENT—AGREEMENT FOR SECU-
RITY—FORECLOSURE.—A written agreement of the same date with
the note, appended thereto, and signed by the maker, stating
that he deposited with the payee "as security" his "government
patent to one hundred and sixty acres of timber land in Hum-
boldt county—certificate No. 7072—dated at Washington, D. C.,
the eighteenth day of October, 1889," and that he further agreed
"to transfer and assign over" to the payee all of his "right
and title to said one hundred and sixty acres of land—certificate
No. 7072," should he fail to pay his obligation, manifests an
intention that the land should stand as security for the debt, and
creates an equitable mortgage, which may be enforced by fore-
closure.

ID.—SUFFICIENCY OF DESCRIPTION.—The reference to the land described
in the patent renders the description certain; and the land is
sufficiently described to indicate what was intended to be mort-
gaged.

ID.—EXECUTORY CONTRACT—EQUITY MAXIM.—The fact that the second
part of the contract is executory does not preclude the existence
of an equitable mortgage. Equity regards as done that which
ought to be done.

ID.—EQUITABLE MORTGAGE, HOW CREATED.—An agreement in writing
to give a mortgage, or a mortgage defectively executed, or an
imperfect attempt to create a mortgage, or to appropriate spe-
cific property to the discharge of a particular debt, will create
a mortgage in equity, or a specific equitable lien on the property
intended to be mortgaged.

ID.—FORM OF WRITING—INTENTION TO CREATE SECURITY.—The form of
the writing which creates an enforceable equitable lien upon
property described is not important, provided it sufficiently ap-
pears that it was thereby intended to create a security for a
debt.

APPEAL from a judgment of the Superior Court of Hum-
boldt County.  E. W. Wilson, Judge.

The facts are stated in the opinion.

George D. Collins, for Appellant.

J. N. Gillett, for Respondent.

CHIPMAN, C.—Foreclosure.   Defendant had judgment on a
general demurrer to the complaint, from which plaintiff appeals.

The action is brought against defendant as administratrix of her deceased husband's estate. The complaint alleges that Homer Manson in his lifetime executed and delivered to plaintiff his certain written instrument, of which the following is a copy:

"$100.00.                    · San Francisco, Cal., Sept. 2d, 1896.

"One day after date (without grace), I promise to pay to the order of Charles H. Higgins the sum of one hundred and no |100 dollars for value received, with interest at the rate of one per cent per month until paid, both principal and interest payable only in United States gold coin.

"(Signed)  H. MANSON."

"San Francisco, Cal., Sept. 2, 1896.

"In consideration of the sum of one hundred no |100 dollars, loaned me by Chas. H. Higgins, I this day deposit with him as security my government patent to 160 acres of timber land in Humboldt county—certificate No. 7072—dated at Washington, D. C., the 18th day of October, 1889; said certificate to be returned to me if the sum of one hundred dollars, and interest at the rate of one per cent per Mo., is paid in one year from date.

"I further agree to transfer and assign over to Chas. H. Higgins all my right and title to said 160 acres of land—certificate No. 7072—should I fail to pay my obligation of one hundred dollars and interest on September 2, 1897.

"(Signed)  HOMER MANSON.

"Witness:

"(Signed)  Geo. E. Dodge."

The complaint alleges that the patent referred to in the instrument was issued to Manson on October 18, 1889, by the United States, whereby title was transferred to Manson to the land sought to be sold, describing it; alleges nonpayment and waives recourse against the property of the estate other than the above-described property, and prays judgment "for the foreclosure of said lien and for the sale of said real property in satisfaction of said lien," and for general relief.

Appellant concedes that a lien cannot be created by the mere deposit of a title deed; but he contends that a lien in the nature

of a mortgage may be imposed upon land without compliance
with section 2922 of the Civil Code. (Citing *Dingley v. Bank
of Ventura*, 57 Cal. 471; *Hill v. Eldred*, 49 Cal. 398; *Kreling v.
Kreling*, 118 Cal. 419, and some other causes; also Civ. Code,
secs. 1636, 1647, 1656, 2872, 2881.)  As to when a written
memorandum makes the deposit of a title deed a mortgage
he cites 1 Jones on Mortgages, sec. 187; 2 Pomeroy's Equity
Jurisprudence, secs. 1235, 1237, 1266; 1 Beach's Modern Equity
Jurisprudence, sec. 291.  To the point that the contract does
not set forth a description of the mortgaged premises, it
is claimed that reference is made to the patent and by the
latter the description is furnished; that the maxim, *Id certum
est quod certum reddi potest*, applies. (Citing *Preble v. Abrahams*,
88 Cal. 251; 22 Am. St. Rep. 301; *Towle v. Carmelo etc. Co.*, 99
Cal. 398.)

Respondent concedes that the law of this state recognizes an
equitable mortgage, and also concedes that an instrument may
be drawn contemporaneous with the deposit of the title deeds
which a court of equity will enforce as an equitable mortgage;
but it is contended that it must be such an agreement as meets
the requirements of our code, and must leave no doubt; and,
further, that the instrument should "expressly state that the
debt was 'secured by, or be a charge on, the land described in
the deed.'" (Citing 3 Pomeroy's Equity Jurisprudence, sec.
1266; and relying especially upon *Gardner v. McClure*, 6 Minn.
250.)  The parties, by their mutual concessions, have reduced
the inquiry to the single question as to the true purport and
meaning of the written instrument pleaded.  The true rule, as
we think, was correctly stated in *Howard v. Iron etc. Co.*, 62
Minn. 298.  "Every express agreement in writing, whereby the
party clearly indicates an intention to make some particular
property therein described a security for a debt, creates an equi-
table lien upon the property, which is enforceable.  The form
of the writing is not important, provided it sufficiently appears
that it was thereby intended to create a security.  If that in-
tention appears, it will create a mortgage in equity, or a specific
lien on the property so intended to be mortgaged." (Citing, in
support thereof, 2 Pomeroy's Equity Jurisprudence, secs. 1235,

1236; *Payne v. Wilson,* 74 N. Y. 348; *Daggett v. Rankin,* 31 Cal.
321; *White Water etc. Co. v. Vallette,* 21 How. 414.)   We are not
concerned, at this time, as to the rights of third persons or
creditors of the estate.   If the complaint is good as between
the parties to the action, it is not demurrable.   (*Howard v. Iron
etc. Co., supra.*)   *Gardner v. McClure, supra,* is a very well-con-
sidered and instructive case.   The agreement there, however,
clearly showed an intention to fix the lien upon the deed and
not upon the land described therein, and the opinion in the
case is mainly a learned review of the doctrine from its incep-
tion in England as applicable to the mere deposit of the deed
unaccompanied by any clear intention to place a lien upon the
land itself.   There was in that case no such clause in the con-
tract as the concluding paragraph of the instrument here.   In
this paragraph there is, we think, a clear intention to make a
transfer of the land itself by Manson, should he fail to pay as
agreed.   Reading the entire instrument, it seems to us the in-
tention is made manifest that the land should stand as security
for the debt, and the land is sufficiently described to indicate
what was intended to be mortgaged.   It is no answer that this
part of the agreement was executory. for equity regards as done
that which ought to be done.   (2 Pomeroy's Equity Jurispru-
dence, sec. 1237.)   In *Daggett v. Rankin, supra,* Mr. Justice
Currey gives what Mr. Pomeroy calls "an admirable statement
of this truth," namely: "The doctrine seems to be well estab-
lished that an agreement in writing to give a mortgage, or a
mortgage defectively executed, or an imperfect attempt to cre-
ate a mortgage, or to appropriate specific property to the dis-
charge of a particular debt, will create a mortgage in equity, or
a specific (equitable) lien on the property intended to be mort-
gaged."

I advise that the judgment be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order is
reversed.                    Temple, J., McFarland, J., Henshaw, J.