[Civ. No. 6749. First Appellate District, Division One.—April 17, 1929.]

G. W. McCLINTICK et al., Appellants, v. W. P. FRAME et al., Respondents.

Siemon & Garber for Appellants.

Gallaher & Jertberg for Respondents.

CAMPBELL, J., *pro tem.*—This is an appeal on the judgment-roll, the appeal being based upon the ground that the court drew an erroneous conclusion from the findings in respect to one particular part of the judgment, appellants asserting that the court erred in failing to hold Theodosia Frame primarily obligated together with W. P. Frame and Herman F. Nicolai for the payment of a certain indebtedness. Defendant Nicolai has not appealed and the judgment is final as to him. The suit was brought to secure declaratory relief, plaintiffs seeking to have the obligations of the respective parties in reference to a certain indebtedness fixed and declared by judgment of the court.

Plaintiffs owned a tract of land upon which they executed a deed of trust to secure the payment of an indebtedness to the Hellman Commercial Trust and Savings Bank and a mortgage to secure another indebtedness to defendant Nicolai, the mortgage being subordinate to the deed of trust. Plaintiffs entered into an agreement to sell the land to defendants W. P. Frame and Theodosia Frame, his wife. The first paragraph of the agreement is as follows: "This agreement made this 1st day of February, 1923, between G. W. McClintick and Catherine McClintick, his wife, the parties of the first part, and W. P. Frame. and Theodosia Frame, his wife, parties of the second part," and was signed by both W. P. Frame and Theodosia Frame. The body of the agreement, however, uniformly designates the McClinticks as "parties," while it uniformly designates the vendee as "second party" or "the party of the second part." Respondents argue that wherever a verb in the contract is the predicate of the first parties the verb is plural; wherever a verb is the predicate of the second party the verb is singular; wherever in the contract appears a pronoun the antecedent of which is the first parties, the pronoun is common gender and plural; wherever in the contract appears a pronoun whose antecedent is the second party, that pronoun is masculine and singular, and, therefore, it may be properly inferred that Theodosia Frame was not considered as an actual party to the contract.

While the agreement uses the singular and masculine form of expression in subsequent clauses, the masculine includes the feminine and the singular includes the plural (Code

Civ. Proc., sec. 17), and Theodosia Frame having signed the agreement, this made her a party thereto regardless of the terms used. In *Eldridge* v. *Mowry,* 24 Cal. App. 183, 188 [140 Pac. 978, 981], the court says: "But a party is presumed to have assented to all the terms of a written contract when he signs it; and the place of the signature is immaterial except in cases where an instrument is required by law to be. subscribed." Furthermore, it is alleged in the complaint that "the defendants Frame made and entered into that certain agreement (February 1, 1923, agreement) in writing," which allegation is admitted in the answer of defendants W. P. Frame and Theodosia Frame, and the court so found. ██ Theodosia Frame having joined in the agreement with her husband, W. P. Frame, by the terms of which the assumption of the encumbrances formed a part of the consideration, and being one of the purchasers, was bound to pay the purchase price as well as her husband, and such obligation is implied, on her executing the agreement, even though the agreement had contained no express assumption of such indebtedness (*Brosseau* v. *Lowy,* 209 Ill. 405 [70 N. E. 901]; *White* v. *Schader,* 185 Cal. 606, 611 [21 A. L. R. 499, 198 Pac. 19]).

In the agreement of February 1st the plaintiffs agree to sell the land in the agreement described to the second party for $28,000 and agree to accept two parcels of property at fixed prices as part payment on the purchase price. The agreement further provides that the second party shall assume a certain mortgage of $8,000 in favor of the Hellman Commercial Trust and Savings Bank; that the second party is to harvest all crops produced on the property and deliver same to first parties, who shall receive sixty per cent of the gross proceeds from such crops; that said sixty per cent shall be applied first in payment of interest on the $8,000 mortgage, second in payment on the unpaid balance due first parties, and the balance on the principal; that the first parties reserve the right at any time during the term of the contract to obtain a loan not to exceed $10,000 and that if the loan can be obtained the second party is to sign with first parties, which loan if obtained the second party agrees to assume and pay according to the terms of such loan, with the understanding that the amount obtained over

and above the present mortgage shall be applied as a credit and payment on the unpaid balance due the first parties.

While the vendees are, excepting in the first paragraph of the agreement, referred to in the singular number as second party, the complaint alleges, the answer admits and the court found the agreement and foregoing conditions thereof to have been made and agreed to by both W. P. and Theodosia Frame.

The subsequent agreement of April 1, 1924, is in the form of a letter written by G. W. McClintick to First National Bank of Delano with the acceptance and approval of W. P. Frame appended thereto and recites that the deed to the property is to be executed to W. P. Frame and Theodosia Frame, his wife, as joint tenants, and is in settlement of McClintick's agreement with W. P. Frame. The obvious purpose of the arrangement was to complete the sale provided for under the February agreement by providing for the payment of the unpaid balance of the purchase price in a somewhat different way. All that appears is that W. P. Frame and G. W. McClintick agreed to wipe out the balance of the unpaid purchase price by Frame assuming and agreeing to pay and receive credit for the Nicolai indebtedness of $2,500; by Frame giving McClintick two notes aggregating $852 and by Frame assuming and agreeing to pay two bills aggregating $570; or, in other words, Frame agreeing to pay McClintick indirectly $3,922 in full satisfaction of the unpaid balance of the purchase price, and McClintick agreeing to pay the current interest, amounting to $350 on the Hellman bank indebtedness, and Frame to assume payment of the first mortgage of $10,000 and the second mortgage of $2,500.

The terms of the April agreement are all in the nature of modifications of the February agreement. Another feature of the April agreement is that it is made in settlement of McClintick's contract with W. P. Frame, and McClintick agrees to convey the land to W. P. and Theodosia Frame as joint tenants subject to the encumbrance of $10,000 and $2,500 and Frame must assume payment of both of these mortgages.

The McClinticks were husband and wife, as were also the Frames; the property dealt with in each case was community property, and neither Mrs. McClintick nor Mrs. Frame, who

signed the February agreement, were parties to or signed this latter agreement of April 1st. As Mrs. Frame was obligated under the February agreement to pay the obligation to the Hellman Commercial Trust and Savings Bank, does the April agreement release her from such obligation? The court in effect answered this question in the affirmative, with the result that Nicolai and W. P. Frame are held primarily responsible to the McClinticks for the payment of the Hellman Commercial Trust and Savings Bank indebtedness, but Mrs. Frame is not.

Under the February agreement the obligations of W. P. and Theodosia Frame are joint and several (Civ. Code, secs. 1659, 1660), and either or both of them could have been compelled to pay the indebtedness. The obligation was for the benefit and was made in favor of Catherine McClintick as well as of her husband, and she did not join in the April agreement. Theodosia Frame was one of the purchasers under the former agreement and under its terms assumed with her husband in the absence of express limitatation the payment of the encumbrances which formed a part of the consideration of the conveyance (*White* v. *Schader, supra*). "A promise made in the singular, but executed by several persons, is presumed to be joint and several" (Civ. Code, sec. 1660). "An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint and not several. . . . This presumption, in the case of a right, can be overcome only by express words to the contrary" (Civ. Code, sec. 1431).

Respondents urge that the original contract was modified by the subsequent April agreement and that new terms in the April agreement take the place of the terms in the February agreement and, therefore, the old contract stands with substitution of the new terms for the old terms that were by the new contract modified. Such claim amounts to a substitution of the individual obligation of W. P. Frame for the joint and several obligations of W. P. and Theodosia Frame and amounts to a claim of novation (Civ. Code, sec. 1530). A novation contract is subject to all the rules concerning contracts in general (Civ. Code, sec. 1532). It would require a consideration from Theodosia Frame to support it, and as the February agreement is in writing a

substitution could only be made by another agreement in writing or by an executed oral agreement (Civ. Code, sec. 1698). It would have to be joined in by all the parties to the original agreement (*California Canning Peach Growers* v. *Downey*, 76 Cal. App. 1 [243 Pac. 679]). The April agreement not being joined in by Catherine McClintick can have no binding effect upon her. ▆ Furthermore, it may be said that a novation has not been pleaded, which it must be if benefits by reason thereof are claimed (*McGinn* v. *Wiley*, 24 Cal. App. 303, 312 [141 Pac. 49]).

▆ It is further urged by respondents that Catherine McClintick by joining in the allegation of the complaint that "on or about April 1, 1924, the plaintiff G. W. McClintick and the defendant W. P. Frame made and entered into that certain written modification of the above-mentioned agreement referred to as Exhibit 'A,' a copy of which modification is hereto annexed and marked Exhibit 'B,' " and defendant Theodosia Frame by joining in the admission in the answer, adopted and ratified the action of G. W. McClintick and W. P. Frame in thus modifying the agreement, and that the admission of the allegation of the complaint pleading performance of the April agreement was another confirmation of the act of the two husbands in modifying the original agreement. The allegations which it is claimed are admitted, however, merely plead a modification according to the effect of the instruments themselves by attaching them as exhibits to the complaint. The extent and character of the modifications alleged and admitted in the pleadings are therefore limited by the terms of the instruments. Nowhere in the April agreement is the provision of the February agreement requiring Theodosia Frame to pay the indebtedness to the Hellman Commercial Trust and Savings Bank in any manner modified, changed or even mentioned. If we should concede respondents' argument to be sound and that the two contracts merged and are to be read together; that the conditions in the new contract, where inconsistent with the conditions in the old contract replace the old conditions, we have a joint and several obligation of W. P. and Theodosia Frame to assume and pay the Hellman Commercial Trust and Savings Bank indebtedness as well as a supplementary agreement of W. P. Frame individually to pay it.

The court found in accordance with the allegation that W. P. Frame and Theodosia Frame executed the February agreement, but made no finding as to whether she was released or discharged from her obligations thereunder—this evidently for the reason that such release or discharge is not pleaded as is required in order to claim release or discharge thereby (*McGinn* v. *Wiley, supra*). The court simply omits the name Theodosia Frame from its conclusions of law when declaring that W. P. Frame and Herman Nicolai are primarily obligated for the payment of the Hellman Commercial Trust and Savings Bank indebtedness, and from the provisions of the judgment which made W. P. Frame and Herman Nicolai primarily responsible.

The court having found that Theodosia Frame executed the February agreement and the subsequent April agreement not having released her from her obligation, the conclusion of law from such finding must follow that she is liable with her husband, W. P. Frame, and Herman Nicolai for the payment of the Hellman Commerical Trust and Savings Bank indebtedness.

The judgment is reversed and the cause remanded, with directions to the trial court to enter judgment in accordance herewith.

Tyler, P. J., and Cashin, J., concurred.