[Civ. No. 7235.   Third Dist.   Apr. 15, 1946.]

EDWARD GARTHOFNER, Appellant, v. INA EDMONDS, as Administratrix, etc., Respondent.

Harry W. Falk for Appellant.

Irwin T. Quinn for Respondent.

THOMPSON, J.—A rehearing was granted in this case to correct an error with respect to the nature of the original obligation upon which an alleged novation occurred. With that modification the opinion is approved as follows:

The plaintiff appealed from a judgment which was rendered pursuant to an order sustaining a demurrer to the amended complaint without leave to amend the pleading. The complaint is founded on an alleged oral agreement of Amanda B. Carter to personally assume and pay a former joint and several oral obligation of herself and her deceased husband to pay plaintiff the sum of $495, for money which they had borrowed. The obligation is alleged to have been payable "on the very day (or soon thereafter) that J. F. Carter receives his thousand dollar inheritance, from William Carson's Will." It was also alleged that Mr. Carter "never did receive said inheritance." The trial court held that the alleged novation did not occur under section 1531 of the Civil Code,

chiefly because there was no valid consideration for the new promise to pay the debt since Amanda B. Carter was originally obligated to pay the entire debt regardless of the alleged new promise. The demurrer to the amended complaint was therefore sustained without leave to amend.

The respondent contends that the amended complaint fails to allege a novation of the debt for the reason that it appears *all of the parties* to the original obligation did not consent to the novation, and because there was no valid consideration for the alleged new promise to pay the debt since the original obligation was a joint and several liability, and Mrs. Carter was already liable for the entire debt. It is also asserted that the debt has not matured and is not due because it was specifically made payable only when "J. F. Carter receives his thousand dollar inheritance, from William Carson's Will," and it is alleged he never did receive that inheritance.

The amended complaint alleges that J. F. and Amanda B. Carter were husband and wife, and that he died November 21, 1943; that during his lifetime, and in January, 1938, plaintiff loaned them $495, which they "jointly and severally orally promised to repay, with interest, on 'the very day (or soon thereafter) that J. F. Carter receives his thousand dollar inheritance from William Carson's Will' "; that he "never did receive said inheritance . . .; that after the death of J. F. Carter, . . . Amanda B. Carter orally promised to, solely and individually, answer for the *said obligation"*; that Amanda B. Carter died May 17, 1944, and upon proceedings duly had, Ina Edmonds was appointed and qualified as the administratrix of her estate; that a claim for said sum of $495 and interest was presented to said administratrix and rejected.

We are persuaded the amended complaint fails to state a valid cause of action against the estate of Amanda B. Carter, deceased, based upon an alleged novation of the debt, chiefly because the necessary elements constituting a novation are not alleged, and because it does not appear the alleged new oral promise of Amanda B. Carter to personally assume and pay the former joint and several obligation of herself and her husband was made for a valid consideration, since she was already obligated personally to pay the debt in full, regardless of the alleged new liability. It follows that the demurrer was properly sustained without leave to amend.

A novation is the substitution of a new obligation for an existing one. (Civ. Code, § 1530.) Novation is made by the

substitution of a new obligation *between the same* parties, with intent to extinguish the old obligation. It may be made by the substitution of a *new debtor* in the place of the old one, with intent to release the latter, or by substitution of a new creditor in the place of the old one, with intent to transfer the rights of the latter to the former. (Civ. Code, § 1531.) Novation is made by contract, and is subject to all the rules, including the necessity for a consideration, which apply to contracts in general. (Civ. Code, § 1532.)

This suit is not founded on the original oral agreement to pay the debt. It is alleged that the former obligation was cancelled, and that the new agreement was substituted on precisely the same terms upon consideration only that plaintiff would cancel the original joint and several obligation of ''J. F. Carter and Amanda B. Carter, incurred in January, 1938, and accept the new promise of Amanda B. Carter as a substitute therefor.'' The alleged new obligation was not consented to by all of the same parties to the former agreement. Mr. Carter did not, and could not consent to the new contract for he was then dead. The new contract was not an agreement to substitute a *new* debtor, nor was it Mrs. Carter's agreement to pay the debt of another person. It was her contract to. pay her own debt which she was already legally bound to pay in full by the terms of the original joint and several obligation. Mrs. Carter was authorized by statute to incur the original joint and several obligation to pay the debt. ▮ Where a married woman joins with her husband signing a note or in incurring an obligation to pay a debt which they owe, the liability becomes joint and several and she may be legally bound to pay the entire debt. (*McClintick* v. *Frame,* 98 Cal.App. 338, 343 [276 P. 1033]; *Hammond Lumber Co.* v. *Danziger,* 2 Cal.App.2d 197, 200 [37 P.2d 517]; *Alexander* v. *Bouton,* 55 Cal. 15; Civ. Code, §§ 158 and 171; 41 C.J.S. 664, § 185b.) Section 158 of the Civil Code provides that:

''Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; . . . .''

The text in 41 Corpus Juris Secundum, section 185b, *supra,* provides that:

''In a jurisdiction in which the wife has power to make a note, . . . a married woman who joins with her husband in making the note is personally liable thereon. In such case

both spouses become liable on the note jointly and severally; and both are liable primarily.''

In the present case, since the wife was already under legal obligation to pay the entire debt, her subsequent oral agreement to personally assume and pay it was without consideration. (*Parrino* v. *Rallis,* 116 Cal.App. 364 [2 P.2d 515] ; *Tipton* v. *Tipton,* 133 Cal.App. 500, 506 [24 P.2d 525] ; *Marinovich* v. *Kilburn,* 153 Cal. 638, 642 [96 P. 303] ; *Rietz* v. *Hovden Food Products Corp.,* 49 Cal.App.2d 376, 382 [121 P.2d 775] ; *Gordon* v. *Green,* 51 Cal.App. 765, 768 [197 P. 955].) Contracts of novation are not different from other contracts. (Civ. Code, § 1531.) They must be based on sufficient consideration to constitute a valid enforceable agreement. (39 Am.Jur. 267, § 22.) It has been held that if the novation contains the promisor's agreement to pay the debt of a person other than the makers of the original contract, in consideration of the promisor's discharge from the original debt, no new consideration is required. (*Leslie* v. *Conway,* 59 Cal. 442; 39 Am.Jur. 267, § 22.) But in this case the promisor was not merely agreeing to pay the debt of another person. She was promising to pay her own debt for which she was already liable on the former joint and several obligation.

In the case of *McClintick* v. *Frame, supra,* under circumstances similar in principle to those of the present case, it was held that the failure of one of the spouses who had joined in a written contract to sell land, to consent to a subsequent oral agreement, made it void under section 1698 of the Civil Code, and that the new agreement did not constitute a novation because it was not acquiesced in by Catherine McClintick, one of the parties to the original written agreement. The judgment was reversed on that account. The court said:

''Respondents urge that the original contract was modified by the subsequent April agreement and that new terms in the April agreement take the place of the terms in the February agreement and, therefore, the old contract stands with substitution of the new terms for the old terms that were by the new contract modified. Such claim amounts to a substitution of the individual obligation of W. P. Frame for the joint and several obligations of W. P. and Theodosia Frame and amounts to a claim of novation (Civ. Code, sec. 1530). A novation contract is subject to all the rules concerning contracts in general (Civ. Code, sec. 1532). It would require a considera-

tion from Theodosia Frame to support it, and as the February agreement is in writing a substitution could only be made by another agreement in writing or by an executed oral agreement (Civ. Code, sec. 1698). It would have to be joined in by all the parties to the original agreement (*California Canning Peach Growers* v. *Downey,* 76 Cal.App. 1 [243 P. 679]). The April agreement not being joined in by Catherine McClintick can have no binding effect upon her.''

We are of the opinion the amended complaint for the reason stated in the preceding case fails to allege facts constituting a valid novation. The alleged oral agreement to cancel the debt and to substitute a new obligation was not between all of ''the same parties'' to the original obligation. It is alleged that J. F. Carter, one of the obligors of the original debt was then dead. He did not and could not consent to the novation. Novation may be consummated by, (1) The substitution of a new obligation *between the same parties,* or (2) by the substitution of *a new debtor in place of the old one, with intent to release the latter.* (Civ. Code, § 1531.) A novation is made by contract, and is subject to all the rules with relation to contracts in general. (Civ. Code, § 1532.)

Novation is a new contract to which *''all of the parties concerned* agree.'' (*Colley* v. *Chowchilla National Bank,* 200 Cal. 760, 770 [255 P. 188, 52 A.L.R. 569]; *U. S. Gypsum Co.* v. *Snyder-Ashe Co.,* 139 Cal.App. 731, 733 [34 P.2d 767]; *California Canning Peach Growers* v. *Downey,* 76 Cal.App. 1, 18 [243 P. 679]; *Young* v. *Benton,* 21 Cal.App. 382, 384 [131 P. 1051]; 39 Am.Jur. 262, § 17.) In the authority last cited it is said:

''It is a well-settled principle that an essential element of every novation is a new contract to which all the parties concerned must agree, and in the absence of such agreement or consent a novation cannot be effected.''

It appears from the amended complaint that the obligation to pay the debt under the alleged new oral agreement may not have accrued for the reason that it was to be paid only when ''J. F. Carter receives his thousand dollar inheritance, from William Carson's Will.'' It is affirmatively alleged that he ''never did receive said inheritance.'' The amended complaint alleges that Amanda B. Carter orally agreed to personally assume and pay ''said obligation *as hereinbefore alleged.''* It was previously alleged that the debt was to be paid on ''the very day (or soon thereafter) that J. F. Carter

receives his thousand dollar inheritance, from William Carson's Will," and that he "never did receive said inheritance." The Civil Code, section 3166, provides that: "Every negotiable instrument is payable at the time fixed."

Ordinarily an instrument made payable by its terms upon the occurrence of a specified event or condition, such as when "the balance of the purchase price" of property is paid (*Green* v. *Robertson,* 64 Cal. 75 [28 P. 446]), or when real estate "becomes the property of the heirs of the late George Hood" (*Egilbert* v. *Hall,* 44 Cal.App.2d 305 [112 P.2d 291]), the debt is payable upon the happening of the specified event. If the happening of the event or condition is within the control of the maker of the instrument the debt may become due, after demand, within a reasonable time. (8 Am.Jur. 27, § 281.) But in the present case the obligors had no control over the time of payment of J. F. Carter's legacy of $1,000 from the estate of Carson. He inherited that sum of money by the terms of the will of Carson. The debt was made payable "on the very day" when that legacy was paid. That was a definite time when, according to the intention of the parties to the obligation, the debt was to mature. However, in view of what we have previously said regarding the invalidity of the alleged novation, it is unnecessary to determine whether or not the debt was payable on demand.

The case of *Fontana Land Co.* v. *Laughlin,* 199 Cal. 625 [250 P. 669, 48 A.L.R. 1308], cited by appellant on petition for rehearing in support of his contention that the death of J. F. Carter, one of the joint and several obligors, terminated his privity to the contract and obviated the necessity of the consent of his representatives to a novation under section 1531 of the Civil Code, is not in point. The question of novation was not involved in that case. It was a suit to quiet title to real property by the purchaser thereof upon probate sale against the holder of an unpaid outlawed mortgage for which no claim had been presented to the estate. The court properly held that the allowance of such an outlawed claim was absolutely prohibited by section 1499 of the Code of Civil Procedure, now section 708 of the Probate Code, and that, while a mortgagor could not ordinarily quiet title against an unpaid debt without first satisfying it, under the circumstances of that case, "*the law* intervened and absolutely severed all privity that may have theretofore existed," and that "the transaction has passed through the purging processes of the

probate court," and "the subsequent renewal of a barred note may create a debt anew, but it does not renew, revive nor continue the mortgage." The court further said: "In the instant case it must be kept in mind that we are dealing with the application of the statute of limitations to *a probate sale* and not with the general question as it affects the privities that exist ordinarily between mortgagors and mortgagees." Upon that principle it was held that the purchaser of the land at the probate sale thereof was entitled to quiet title against the outlawed mortgage, and the judgment was re-versed. The Laughlin case has no application to the doctrine of novation or the requirements of section 1531 of the Civil Code with relation thereto. But even if the language of that opinion be deemed to be authority holding that by the death of a mortgagor all privity between the original parties thereto having terminated, the consent of the representatives of the deceased person becomes unnecessary to a valid novation of the debt, it is not conclusive in the present case, because there was no consideration for the alleged new promise in this case.

For the reason that the court properly sustained the demurrer to the amended complaint for failure to allege facts sufficient to constitute a valid novation, the judgment against the plaintiff should be affirmed. It is so ordered.

Adams, P. J., and Peek, J., concurred.